

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00212-CV

_____

FALAH ALGAISSI, Appellant

V.

TAIMA ABU QAMER, Appellee

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-734622-23

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

This is an appeal of a final divorce decree between Appellant Falah Algaissi (Husband)[1] and Appellee Taima Abu Qamer (Wife). In three issues, Husband contends that the trial court abused its discretion by (1) appointing Wife joint managing conservator with the exclusive right to designate the children's primary residence despite evidence of intentional physical abuse, (2) dividing the community estate without evidence of fair market value of certain "material assets" at the time of divorce, and (3) finding actual and constructive fraud and awarding fraud-based relief when there is legally and factually insufficient evidence of fraud. Because (1) Husband failed to show good cause for his failure to timely obtain the reporter's record; (2) Husband invited any error by the trial court by agreeing to the divorce decree; and (3) the trial court did not abuse its discretion, we will affirm.

### II. BACKGROUND

**A. Wife and Husband file for divorce; a trial is held; and a divorce decree is entered.**

Wife and Husband married in 2008 and had three children. In May 2023, Wife filed her original petition for divorce. One month later, Husband filed his answer and

---

[1]While Husband's name is also spelled "Al-Gaissi" and "Algassi" at various times in the record and briefs, we have used the spelling in the pleadings and the divorce decree.

original petition for divorce. Trial to the bench was held in November 2024,[2] and the trial court issued a letter ruling the next month.

After Husband filed his amended motion to enter a final decree of divorce and objections to Wife's proposed divorce decree and a hearing was held on Wife's motion to clarify, the trial court signed the final divorce decree in April 2025. Both parties' attorneys and Husband signed the last page of the decree, and Husband's signature appears under the following words: "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE."

Husband requested findings of fact and conclusions of law, which the trial court entered.[3] Husband timely appealed.

## B. Husband fails to timely request the reporter's record.

On August 27, 2025, the court reporter informed us that payment arrangements had not been made for the reporter's record. We sent Husband a copy of the letter and notified him that unless, by October 6, 2025, he paid or arranged to pay the court reporter and provided us with proof of payment, we could consider and decide this appeal on issues that do not require a reporter's record for a decision. *See* Tex. R. App. P. 37.3(c). Husband failed to either pay or make arrangements to pay the court reporter by the October deadline.

---

[2]More of the facts and evidence from the trial will be set out in the analysis below.

[3]No request for additional findings and conclusions was made.

Thereafter, we notified the parties that because Husband had failed to pay or arrange to pay for the reporter's record, we would consider and decide this appeal on the issues that do not require a reporter's record for a decision. We set briefing deadlines and informed Husband that his brief was due on or before November 24, 2025.

**C. Husband requests extensions to file his brief; we grant the extensions but reserve ruling on his motion for leave to consider the appeal with the reporter's record.**

On December 1, 2025, Husband filed his first "Motion to Extend Time to File Brief," requesting an additional forty-five days "to obtain the reporter's record and file his brief." After considering the motion, we granted the extension and ordered his brief due January 8, 2026.

On January 8, 2026, Husband filed his second motion for extension of time "to obtain the reporter's record and file his brief." Wife filed an objection to the motion and requested clarification if this appeal would be considered and decided without a reporter's record pursuant to our earlier letter. In her objection, Wife noted that Husband "has not filed any motion requesting that the Court reconsider its decision that the appeal would be determined on issues that do not require a Reporter's Record for a decision."

We responded with our January 16, 2026 order, setting out in detail the procedural posture of this appeal. The order provided:

> [Wife] is correct in that [Husband] has not filed a motion asking us to reconsider our decision to decide this appeal without a reporter's record

4

due to [Husband's] failure to pay the court reporter. However, by our December 1, 2025 order, we inherently treated [Husband's] first motion for extension—in which he requested additional time "to obtain the reporter's record and file his brief"—as a request to reconsider that decision and granted the motion, setting a January 8, 2026 deadline.

[Husband] did not "obtain the reporter's record and file his brief" by January 8, 2026. The court reporter has informed this court that [Husband] has paid for the record but that he did not make arrangements to pay for the record until just days before the January 8, 2026 deadline. And [Husband's] payment did not actually go through until January 12, 2026, per the court reporter. Because the court reporter did not receive payment for the reporter's record until four days prior to the date of this order, the reporter's record has not been filed.

We will treat [Husband's] second motion for extension, in part, as a motion for leave to consider this appeal with the reporter's record, and we will reserve our ruling on the motion. **In his brief, [Husband] must show good cause for his failure to obtain the reporter's record despite being given multiple chances to do so, including an explanation regarding his efforts to make arrangements to pay for the record.** [Emphasis added and footnotes omitted.]

In the order, we noted that "[p]ending a sufficient showing of good cause, this appeal will be considered and decided on the issues that do not require a reporter's record for a decision. *See* Tex. R. App. [P.] 37.3(c)."[4]

After our order was entered, the reporter's record was filed and Husband filed his brief, but he disregarded our instruction to show good cause and offered no explanation regarding his efforts to make arrangements to pay for the record.

## III. DISCUSSION

---

[4]We also noted in the order that Husband misrepresented that the court reporter needed additional time to prepare the reporter's record because she "was working on another transcript for a different appeal" as opposed to the real reason—the court reporter had not been paid.

In his three appellate issues, Husband argues that the trial court abused its discretion by (1) appointing Wife joint managing conservator with the exclusive right to designate the children's primary residence "despite credible evidence of intentional physical abuse, in contravention of the mandatory limitations imposed by Texas Family Code [Section] 153.004(b)"; (2) dividing the community estate by assigning values to "material assets . . . without competent evidence of fair market value at the time of divorce"; and (3) finding actual and constructive fraud and awarding fraud-based relief "where the record lacks legally and factually sufficient evidence of the elements of fraud and the amount of any harm to the community estate." In response, Wife argues that (1) Husband's brief fails to address and establish "good cause" as required by our order, and therefore, the appeal is limited to issues that Husband raised in his brief that do not require reference to the reporter's record (and that all of Husband's issues require such reference for determination); (2) Husband invited any error by agreeing to the divorce decree; and (3) the trial court did not abuse its discretion in making its rulings.

## A. Husband makes no attempt to establish good cause for failure to timely obtain the reporter's record as required by our order.

Husband's brief never mentions our January 16, 2026 order or his good cause for failure to obtain the reporter's record. Even after Wife's brief pointed out this procedural void, Husband failed to file a reply brief to address the omission. Therefore, we must decide first whether the issues in this appeal require a reporter's record and second what effect, if any, that has on this appeal.

6

In each of his three issues, Husband argues that the trial court abused its discretion in making a specific ruling. Most of the appealable issues in a family law case are evaluated against an abuse of discretion standard. *See In re Marriage of Featherston*, 675 S.W.3d 330, 333 (Tex. App.—Amarillo 2023, no pet.). In determining whether the trial court abused its discretion by deciding an issue without sufficient evidentiary support, we ask first whether the court had sufficient information on which to exercise its discretion and second whether it erred in its application of that discretion. *Id.*; *see Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (stating that if some evidence of substantive and probative character supports the trial court's decision, there is no abuse of discretion). However, in cases where there is no reporter's record, an appellate court cannot review the evidence that was before the trial court and consequently cannot review a trial court's order for abuse of discretion. *In re Marriage of Ray & House*, No. 12-25-00015-CV, 2025 WL 2492067, at *2 (Tex. App.—Tyler Aug. 29, 2025, pet. denied) (mem. op.); *see Dunlap v. City of Fort Worth*, No. 02-21-00130-CV, 2021 WL 5028767, at *4 (Tex. App.—Fort Worth Oct. 28, 2021, no pet.) (mem. op.) ("We cannot conduct a review of the trial court's exercise of discretion when we lack an adequate record to determine how the trial court exercised that discretion.").

Because Husband failed to respond to the requirement of our January 16, 2026 order to show good cause for his failure to timely obtain the reporter's record, the reporter's record should not be considered in this appeal. *See Carter v. Goldberg*,

7

598 S.W.2d 908, 909–10 (Tex. App.—Dallas 1980, no writ) (per curiam) (denying a motion for extension because "insufficient facts are stated in the motion and attachments from which we can determine whether good cause exists for the requested extension of time"); *see also Patterson v. Hall*, 430 S.W.2d 483, 486 (Tex. 1968) (stating that in deciding "good cause" for an extension of time to file a transcript, an appellate court has a duty to decide "the preliminary question of whether the request for the record was made within a reasonable time after notice of appeal was given"); *Pledger v. Ools*, 476 S.W.2d 854, 857 (Tex. App.—Amarillo 1972, no writ) (stating that a delay in ordering the transcript "negatives a showing of good cause for the extension of time"). And because all of Husband's issues require consideration of the reporter's record, we cannot review the trial court's order for abuse of discretion. *See Marriage of Ray & House*, 2025 WL 2492067, at \*2. We therefore can assume that the underlying trial was properly conducted and that sufficient evidence supported the trial court's order, and we can thus overrule Husband's appellate complaints on this basis. *See Sanadco Inc. v. Hegar*, No. 03-14-00771-CV, 2015 WL 4072091, at \*2 (Tex. App.—Austin July 3, 2015, no pet.) (mem. op.) ("Without a reporter's record, we have no way to determine what evidence, if any, was adduced at the hearing and, therefore, whether the trial court abused its discretion. . . . We therefore assume the underlying proceeding was properly conducted and that sufficient evidence supported the trial court's decision.").

However, despite Husband's abject failure to respond to our order, we are aware of the supreme court's "general approach of resolving cases on the merits and preserving appellate rights when possible." *See Estate of Wheatfall*, 729 S.W.3d 788, 793 n.3 (Tex. 2026); *In re B.C.*, No. 02-25-00230-CV, 2026 WL 1041631, at *2 n.6 (Tex. App.—Fort Worth Apr. 16, 2026, no pet. h.) (mem. op.); *see also Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011) ("Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults."). In accordance with that approach and despite Husband's failure to comply with our order, we nevertheless will proceed to examine the merits.

## B. Husband's signature on the divorce decree invited error, if any, by the trial court.

As set out above, Husband signed the divorce decree under the words "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE." The decree also included language acknowledging that before he signed it, Husband had read the decree "fully and completely," "had the opportunity to ask any questions regarding" the decree, "fully underst[oo]d that the contents of th[e] Final Decree of Divorce constitute[d] a full and complete resolution of th[e] case," "voluntarily affixed" his signature to the decree, and believed that the agreement was a "just and right division of the marital debt and assets." While Wife did not sign the decree, both Wife's and Husband's attorneys did.[5] Because Husband

---

[5]The attorneys' signatures were below the trial court's signature line but did not include language regarding either the form or substance of the decree.

agreed to the divorce decree in form and substance, Wife contends that he invited any error by the trial court. Therefore, we must decide whether Husband's signature on the divorce decree invited any error.

"The invited error doctrine applies to situations where a party requests the court to make a specific ruling, then complains of that ruling on appeal." *Galvan v. Garcia*, 502 S.W.3d 382, 385 (Tex. App.—San Antonio 2016, no pet.) (quoting *In re Dep't of Fam. & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (orig. proceeding)). "A party cannot ask something of the trial court and then complain the trial court erred in granting the relief sought." *In re R.H.B.*, 660 S.W.3d 136, 154 (Tex. App.—San Antonio 2022, no pet.).

A party's consent to the trial court's entry of judgment waives any error, except for fundamental error, contained in the judgment, and that party has nothing to properly present for appellate review. *DHI Holdings, LP v. Deutsche Bank Nat'l Tr. Co. as Tr. for Morgan Stanley ABS Cap. I Inc. Tr. 2006-HE3, Mortg. Pass-Through Certificates, Series 2006-HE3*, 650 S.W.3d 522, 526–28 (Tex. App.—Houston [14th Dist.] 2021, pet. denied); *see Estate of Nielsen*, No. 02-17-00251-CV, 2018 WL 4625531, at *3–7 (Tex. App.—Fort Worth Sept. 27, 2018, pet. denied) (mem. op.) (discussing various permutations of language above the signature of a party or attorney, including words such as "agreed" or "approved" or "approved as to form," and affirming the trial court's judgment because "the agreed order leaves nothing to properly present for appellate review"). "To preserve error for appeal, a party who signs a judgment must

specify that his agreement with the judgment is *as to form*, but not as to substance and outcome." *Mailhot v. Mailhot*, 124 S.W.3d 775, 777 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *First Nat'l Bank v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989)).

Texas courts have repeatedly held that a party cannot attack on appeal a judgment that the party itself approved or induced absent an allegation and proof of fraud, collusion, or misrepresentation. *Lerner v. Schott*, No. 01-24-00342-CV, 2026 WL 958567, at *3 (Tex. App.—Houston [1st Dist.] Apr. 9, 2026, no pet. h.) (mem. op.); *see Boufaissal v. Boufaissal*, 251 S.W.3d 160, 162 (Tex. App.—Dallas 2008, no pet.) ("[A] party will not be allowed to complain on appeal of an action or ruling which she invited or induced."). Here, there are no allegations of fraud, collusion, or misrepresentation.

Because Husband's signature signifies his approval and consent to the terms of the final divorce decree, he has waived any complaints that he now attempts to raise on appeal. *See Mamoe v. Mamoe*, No. 03-23-00258-CV, 2024 WL 4137329, at *3 (Tex. App.—Austin Sept. 11, 2024, no pet.) (mem. op.) ("Because [Appellant's] testimony and signature signify his approval and consent to the terms of the agreed decree as to both form and substance, he has waived any complaints he now attempts to raise on appeal."); *Boufaissal*, 251 S.W.3d at 162. However, even if Husband had not waived any error on appeal, the trial court did not abuse its discretion in entering the divorce decree.

**C.** **The trial court did not abuse its discretion by appointing Wife joint managing conservator with the right to designate the children's primary residence.**

In his first issue, Husband contends that the trial court's conservatorship order "collides head-on with Texas Family Code [Section] 153.004(b)." Specifically, he argues that when there is evidence of a history or pattern of family violence, the trial court may not appoint joint managing conservators. According to Husband, there is evidence here of intentional physical abuse committed by Wife against one of the children and against him.

### 1. Standard of Review and Applicable Law

Conservatorship determinations are reviewed for an abuse of discretion. *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re E.D.*, No. 02-20-00208-CV, 2022 WL 60781, at *10 (Tex. App.— Fort Worth Jan. 6, 2022, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily or unreasonably, meaning that it acts without reference to any guiding rules or principles. *J.J.R.S.*, 627 S.W.3d at 218; *E.D.*, 2022 WL 60781, at *10–11.

The sufficiency of the evidence is a factor in deciding whether the trial court abused its discretion. *C.W. v. B.W.*, No. 02-19-00270-CV, 2020 WL 4517325, at *2 (Tex. App.—Fort Worth Aug. 6, 2020, no pet.) (mem. op.). "As long as some evidence of a substantive and probative character supports the trial court's decision, it does not abuse its discretion." *E.D.*, 2022 WL 60781, at *11; *see C.W.*, 2020 WL 4517325, at *2. But if the trial court's ruling is not supported by legally and factually

12

sufficient evidence, then it abuses its discretion. *E.D.*, 2022 WL 60781, at *11; *see C.W.*, 2020 WL 4517325, at *2.

In a bench trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *In re C.L.M.*, No. 01-23-00919-CV, 2025 WL 2165184, at *12 (Tex. App.—Houston [1st Dist.] July 31, 2025, no pet.) (mem. op.). The trial court may accept or reject all or any part of a witness's testimony. *City of Keller*, 168 S.W.3d at 819. "In a suit for dissolution of a marriage, the husband and wife are competent witnesses for and against each other," and if either testifies, "the court or jury trying the case shall determine the credibility of the witness and the weight to be given the witness's testimony." Tex. Fam. Code § 6.704.

When there is conflicting evidence presented at trial, it is the province of the factfinder to resolve such conflicts. *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is not within the province of an appellate court to interfere with the factfinder's resolution of conflicts in the evidence. *See In re J.J.G.*, 540 S.W.3d 44, 56 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A reviewing court cannot substitute its judgment for that of the fact-finder, so long as the evidence falls within the zone of reasonable disagreement.").

In our review of a trial court's discretionary ruling on a conservatorship issue, the primary consideration is always the best interest of the child. *E.D.*, 2022 WL 60781, at *12, *16; *C.W.*, 2020 WL 4517325, at *3; *see* Tex. Fam. Code § 153.002

13

("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."). A trial court may appoint a sole managing conservator or joint managing conservators. Tex. Fam. Code § 153.005(a). There is a rebuttable presumption that the appointment of the child's parents as joint managing conservators is in the child's best interest. *Id.* § 153.131(b). However, a finding of a history of family violence involving the child's parents removes this presumption. *Id.* "Family violence" includes an act by a family or household member against another family or household member "that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defense measures to protect oneself." *Id.* § 71.004(1).

To determine whether a person may be appointed as the sole managing conservator or as a joint managing conservator,

> the court shall consider evidence of the intentional use of abusive physical force, or evidence of sexual abuse, by a party directed against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

*Id.* § 153.004(a). It is a rebuttable presumption

> that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

14

*Id.* § 153.004(b).[6]

## 2. Analysis

The divorce decree contained no finding of family violence. As relevant to Husband's first issue, the trial court entered the following findings and conclusions:

- It is in the best interest of the children that [Wife] and [Husband] be appointed joint managing conservators of the children and that [Wife] have the exclusive right to designate the children's primary residence; the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures; the exclusive right to consent to psychiatric and psychological treatment of the children; and the exclusive right to receive child support for the children.

- [Wife] and [Husband] should be named joint managing conservators of the children and that [Wife] have the exclusive right to designate the children's primary residence; the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures; the exclusive right to consent to psychiatric and psychological treatment of the children; and the exclusive right to receive child support for the children.

At trial, Husband testified that "[s]ometime in 2023 . . . [p]robably March," Wife hit their son, leaving a mark on his back. Husband introduced into evidence a photograph that he contends showed "a visible mark on the child's back" that he says was caused by Wife. Moreover, Husband averred that Wife had struck him with a

---

[6]Even if there was only one incident of abuse proven, a single incident of physical abuse is not automatically a history of physical abuse. *See C.C. v. L.C.*, No. 02-18-00425-CV, 2019 WL 2865294, at *12 (Tex. App.—Fort Worth July 3, 2019, no pet.) (mem. op.). Rather, "the statute leaves it to the trial court's broad discretion to decide whether the act reaches the threshold of being a history." *Id.* "[A] single act, even if its occurrence is undisputed, does not necessarily mandate a finding that a history of abuse exists." *Id.* at *17.

15

broom. Wife disagreed with both allegations, stating that she had never struck her son and that she had merely shook the broom at Husband. According to Wife, she "grabbed [the broom] and kept it with [her] for protection because [she] wanted to speak to [Husband] and [she] knew he wouldn't listen." Wife testified that, instead of her hitting their son, Husband "would push [son] to hit [her] and attack [her]."

Husband argues that the testimony about the son and the broom incidents constituted credible evidence of a history or pattern of past physical abuse by Wife. He further claims that this evidence precluded the trial court from appointing Wife as a joint managing conservator.

While Husband testified that there were two instances of family violence, Wife denied that either event occurred. As the trier of fact, the trial court was free to determine the credibility of the witnesses, to resolve any conflicts or inconsistencies in the testimony, and to decline to make a family-violence finding. *See C.L.M.*, 2025 WL 2165184, at *12–20; *see also Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *4 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.) ("A factfinder is not compelled to believe uncontradicted testimony that is suspicious or that comes from an interested or biased source."). And absent a family-violence finding, there was insufficient "substantive and probative" evidence to rebut the statutory presumption favoring a joint managing conservatorship. *See E.D.*, 2022 WL 60781, at *11.

Once the trial court ordered the parents appointed as joint managing conservators, it was required to designate the conservator who has the exclusive right to determine the primary residence of the children. *See* Tex. Fam. Code § 153.134(b)(1). The trial court heard evidence that during the marriage, Wife "care[d] for the children, cooked for them, t[oo]k them to school, and [went] to their schools' activities, me[]t with their teachers, wash[ed] their clothes, t[ook] them places," while Husband "[j]ust work[ed]." Wife also testified that when Husband came home from work, he did not do things with the children and did not even seem interested in the children. She stated that he did not do homework with the children and went to only "[o]ne percent of the[ir] appointments."[7]

After their separation, Wife testified that she still came to the house to take care of the children while Husband was at work. Wife was currently a teacher's assistant at school, and she had the same schedule as the children, including summers and school breaks. She was able to pick them up from school every day, whereas Husband could not do it because he was at work. According to Wife, she wanted primary custody "because [she was] the one who raised them, and [she] was the one who was always with them. [She] was alone responsible for them and [she] kn[e]w how to care for them and [she] kn[e]w everything in their interest."

The trial court could have determined that it was in the best interest of the children to designate Wife as the conservator with the exclusive right to designate the

---

[7]Husband disagreed with this assessment.

17

children's primary residence because she was the parent who best communicated the needs and concerns of the children. *See In re A.N.G.*, No. 07-25-00156-CV, 2026 WL 231970, at *4 (Tex. App.—Amarillo Jan. 28, 2026, no pet.). Because some evidence of a substantive and probative character exists to support the trial court's decision, we hold that the trial court did not abuse its discretion by finding that it was in the best interest of the children that Wife be appointed as the person who determined their primary residence. *See id.* For this reason, as well as for the reasons stated above—Husband's failure to show good cause for the delay in requesting the reporter's record and Husband's approval of the form and substance of the divorce decree—we overrule Husband's first issue.

## D. The trial court did not abuse its discretion in its division of the community estate.

In his second issue, Husband contends that the trial court abused its discretion in its division of the community estate. According to Husband, the trial court's property division "has no basis in law or fact." Specifically, Husband complains about the value placed on what he refers to as the "material assets"—the "marital residence, Husband's 38% business interest, and retirement/financial accounts." While not mentioned in his second issue, Husband's brief also addresses the trial court's valuation of the two vehicles owned by Husband and Wife.[8]

---

[8]While the trial court divided all of the marital estate, Husband's brief discusses only the marital residence, the 38% business interest, the 401(k), and the vehicles. To the extent Husband is claiming that any other assets were not properly divided, he has waived that issue due to inadequate briefing. *See* Tex. R. App. P. 38.1(i) (requiring

18

### 1. Standard of Review and Applicable Law

In a divorce decree, "the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001. A number of factors may be relevant to the determination of a "just and right" division. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). A non-exclusive list includes such factors as the parties' disparity in income or earning capacity, the parties' capacities and abilities, the parties' relative needs and financial condition, the parties' relative fault in ending the marriage, the benefits the party without fault would have received had the marriage continued, as well as the parties' relative physical conditions, future business prospects, disparity in age, separate estates, and education, and the nature of the property to be divided. *Id.* While a trial court's division of the estate can be corrected on appeal for an abuse of discretion, the trial court has wide discretion in balancing these factors and determining the proper division. *Id.* at 698; *see Landry v. Landry*, 731 S.W.3d 630, 633 (Tex. 2026) ("Appellate courts may not overturn a trial court's decision dividing the marital estate absent an abuse of discretion.").

In reviewing the division of a marital estate, the appellate court may not substitute its own discretion for that of the trial court. *See McKnight v. McKnight*,

---

brief to contain a clear and concise argument for the contentions made with appropriate citations to authorities and the record); *see also Bowen v. Bowen*, No. 02-10-00297-CV, 2011 WL 3426233, at *6 n.11 (Tex. App.—Fort Worth Aug. 4, 2011, pet. denied) (mem. op.).

543 S.W.2d 863, 866 (Tex. 1976). An abuse of discretion requires something more than that the trial court should have reached a different result. *Nath v. Tex. Child.'s Hosp.*, 446 S.W.3d 355, 371 (Tex. 2014). Because "the court is not required to divide the property equally," even if a trial court mischaracterizes property, we may not reverse unless it is shown that the mischaracterization rendered the overall distribution of property unjust and unfair. *Attaguile v. Attaguile*, 584 S.W.3d 163, 176 (Tex. App.—El Paso 2018, no pet.). "The party complaining of the trial court's property division must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion." *In re Marriage of Williams*, No. 06-18-00041-CV, 2018 WL 6424245, at *4 (Tex. App.—Texarkana Dec. 7, 2018, pet. denied) (mem. op.). We afford the trial court wide discretion when making this equitable division. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998).

A trial court's property-division-related findings of fact have the same force and dignity as a jury's answers to jury questions. *Mohammed v. Mohammed*, No. 02-23-00449-CV, 2024 WL 4455845, at *5 (Tex. App.—Fort Worth Oct. 10, 2024, no pet.) (mem. op.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). A trial court's fact-findings on disputed issues are not conclusive, and when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Id.* (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). However, as long as they are supported by the record, we defer to the trial court's

findings of fact, and we review a court's conclusions of law de novo. *Id.* (citing *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020)).

## 2. Analysis

Husband complains in his second issue that the trial court "valued key assets without competent valuation evidence—numbers not proven, not supported, and not traceable to the record." In his brief, these "key assets" are identified as the marital residence, his 38% business interest, a 401(k), and the vehicles.

As relevant to Husband's second issue, the trial court entered the following findings and conclusions:

- At the time of trial, [Wife] and [Husband] acquired the following community assets with a fair market value listed and that the division of these assets and liabilities as shown below is equitable and just and right:

| Asset Type | Description | FMV (per court) | To Wife | To Husband |
|---|---|---|---|---|
| Realty | 8325 Estandarte | $333,000 | Sold-$333,700 | |
| Pinnacle Bank | -7598 | $13,726.28 | | $13,726.28 |
| Withdrawals | H's withdrawals | $35,000 | | $35,000 |
| Health Equity | HAS | $27,484.65 | | $27,484.65 |
| Wells Fargo | -5752 | $27.33 | | $27.33 |
| Hulen Dentistry | 38% Interest | $100,000 | | $100,000 |
| Fidelity 401(k) | Pacific Dental | $40,871 | $20,400 | $20,400 |
| Fidelity 401(k0 | Reconsititution | $40,000 | | $40,000 |
| Motor Vehicles | Values Negligible | | Her possession | His possession |
| TOTALS | | | $354,100.00 | $236,087.98 |

21

- The community assets and liabilities have been identified and valued in accordance with law and the parties' pleadings and requests at trial. There was sufficient credible evidence at trial to support the Court's findings of value and division of assets. The Court's division of the community assets and liabilities is a just and right division, having due regard for the rights of each party, and is within the Court's discretion in accordance with Tex. Fam. Code §[]7.001, et. seq., and the case law and factors described therein and thereunder.

While Husband claims that the decree's valuations are "unmoored" with "key assets" valued "without competent valuation evidence," both Husband and Wife testified about the value of their marital property and had exhibits admitted into evidence that set out their proposed valuations.[9] Because the exhibits were admitted for all purposes, they are some evidence of the value of the items listed therein. *See Logsdon v. Logsdon*, No. 02-14-00045-CV, 2015 WL 7690034, at *9 n.20 (Tex. App.—Fort Worth Nov. 25, 2015, no pet.) (mem. op.) ("To the extent that Wife asserts that Husband's proposed property division and inventory constitutes 'no evidence' of value because it was admitted only as a property division, we reject this contention."); *see also Smith v. Smith*, No. 02-20-00370-CV, 2022 WL 1682427, at *4 (Tex. App.—Fort Worth May 26, 2022, no pet.) (mem. op.) (holding that the spreadsheet exhibits were "evidence from both parties about the value of their assets and liabilities").

---

[9]Husband testified that the amended inventory and appraisement that was admitted into evidence listed all of the assets and liabilities that he was aware of and that to the best of his knowledge, everything on it was true and accurate. Wife requested that the trial court divide the marital estate in accordance with the spreadsheet that she had admitted into evidence.

22

### a. Marital Residence

With regard to the marital residence that the trial court valued at $333,000[10], Wife's proposed property division valued it at $409,000, while Husband's inventory and appraisement valued it at $355,000. However, prior to entry of the divorce decree, the trial court heard additional testimony about the house's condition.[11] At that hearing, the realtor—Mary Boueri—testified about the condition of the house.

According to Boueri, she listed the property for sale in January 2025 and started to encounter difficulties in selling it.[12] As related by Boueri, when she first did a walkthrough of the property, it was "very dirty" with "marks on the wall," a "broken window in front of the house," and "stains everywhere and an odor." In addition to having to pay to have the house cleaned, Boueri had to have items removed from the house, a broken light fixture replaced, a microwave installed, and the HVAC serviced.

---

[10]According to the finding of fact, the residence sold for $333,770.

[11]While this hearing was on Wife's "Motion to Clarify," her motion was not one for clarification under Texas Family Code Section 9.008, as the hearing was held prior to entry of the divorce decree. *See* Tex. Fam. Code ch. 9 ("Post-Decree Proceedings"), 9.008(a) ("On the request of a party or on the court's own motion, the court may render a clarifying order before a motion for contempt is made or heard. . . ."), .008(b) ("On a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order. . . ."). In her motion, Wife asked for clarification about the "parties' obligations regarding the condition of the marital residence." In the trial court's letter ruling after the hearing, the trial court stated that it found the motion to clarify to "substantively [be] a motion for further orders."

[12]At trial, both attorneys agreed that the residence would be listed for sale and that Husband would maintain the residence in its current condition until it was sold.

According to Boueri, Husband also stated on the seller's disclosure that there was possible roof damage, and after further inspection, she discovered that the entire roof had to be replaced. Boueri testified that replacing the roof would cost $30,000. This additional evidence supports the trial court's determination of a lower value than the parties had initially presented. On this record, we conclude that the evidence of the house's value was legally and factually sufficient, and in light of the broad discretion vested in the trial court in dividing the property of parties in a divorce, we cannot say that the trial court abused its discretion in its valuation of the residence. *See In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 391 (Tex. App.—Dallas 2013, no pet.) (stating that the trial court "heard the conflicting opinions on the value of the houses" and concluding that "[o]n the record before us," the evidence of the houses' values was legally and factually sufficient and that the trial court did not abuse its discretion in its valuation of the houses).

### b. Husband's 38% Business Interest

With regard to Husband's equity interest in his business—Hulen Modern Dentistry—both Wife and Husband testified that Husband owned a 38% interest in the business. According to Husband, he bought his interest in the dental practice from Pacific Dental Services, and he receives a distribution from them for his equity interest "[i]f there's any left over after paying all of the expenses." Husband testified that if he and Pacific Dental Services "decide to split at any point for whatever reason, then [Pacific Dental Services] will buy [his interest] back." While Husband stated that

24

he had no idea what the "payout" from Pacific Dental Services would be, he asked the trial court to order that his interest in the business be sold and that the payout be split between him and Wife.

Husband testified that he paid "over $100,000"—"[p]robably" $105,000—to buy his interest in 2016 but that his equity interest was worth $42,411 as of March 2024. Wife's exhibit also estimated the value of the interest at $42,411, while Husband's exhibit put it at $0.

The evidence at trial valued Husband's 38% interest in his dental practice at various amounts. While the trial court valued it at $100,000, that amount is within the range of evidence admitted, especially in light of the fact that Husband paid "over $100,000" for his interest. *See Rice v. Rice*, No. 02-21-00413-CV, 2023 WL 109817, at *16 (Tex. App.—Fort Worth Jan. 5, 2023, no pet.) (mem. op.) ("[W]hen a factfinder is presented with a viable range of values . . . , the factfinder may choose a value within that range."). Again, based on this record, the trial court's valuation of the 38% business interest was supported by at least some probative and substantive evidence of value, and we conclude that the trial court's valuation was not an abuse of discretion. *See Banker v. Banker*, 517 S.W.3d 863, 873 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied).

### c. Retirement Account

With regard to the 401(k) account, Wife's exhibit places the value at $88,140, and Husband's puts it at $81,203.84. However, Wife testified that Husband removed

$56,000 from the account in December 2023. Husband acknowledged that he had obtained a loan against the 401(k) and had used the money for "household expenses" and to send to his family overseas. His exhibit states that the balance of the loan was $35,764.87. Again, the trial court's determination that the value totaled $40,871 is within the range of the evidence admitted, and we conclude that the trial court did not abuse its discretion in its valuation. *See Rice*, 2023 WL 109817, at *16; *Banker*, 517 S.W.3d at 873.

### d. Vehicles

Finally, both Husband and Wife testified about the value and condition of their respective vehicles. Wife stated that her 2013 Mercedes had "lots of problems" with monthly repair bills of $200 on average "because it breaks down a lot" but that Husband's Nissan Pathfinder was worth $45,000 although he still owed about $15,000 on it. Wife's exhibit put a value of $4,000 on the Mercedes, while valuing the Pathfinder at $25,000 with a loan balance of $15,000 and a "net to Husband" of a $10,000 value.

Husband disagreed that his vehicle was worth $45,000, saying that amount is for a "brand-new car" and instead placed a value of $18,000 with a loan balance as of August 22, 2024, of $14,364.80, while valuing Wife's Mercedes at $10,000. He also disagreed with Wife's assessment of her Mercedes, stating that it "has cosmetic issues, not mechanical issues." Husband's inventory and appraisement that was admitted into evidence showed his 2022 Pathfinder had an "estimated value" of $18,000,

26

"current balance" of $14,364.80 as of August 22, 2024, and a "current net equity in vehicle" of $3,635.20.  The divorce decree ordered Husband to pay the "balance due, including principal, interest, and all other charges" on the promissory note securing the purchase of the Pathfinder.

While the trial court's findings described the "[m]otor [v]ehicles" as "[v]alues [n]egligible," the findings left blank the fair market value for the vehicles but awarded each spouse the vehicles they used, thus reflecting comparable values for the vehicles. As the appealing party, it was Husband's burden to demonstrate that the trial court abused its discretion based on the evidence in the record.  *See Banker*, 517 S.W.3d at 874.  Based on this record, Husband has failed to establish that the trial court abused its discretion.  *See id.*

Therefore, in summary, there was legally and factually sufficient evidence of the value of the marital residence, Husband's 38% interest in Hulen Modern Dentistry, Husband's 401(k), and the vehicles.  Because we see no abuse of discretion in the way that the trial court divided the property and for the reasons stated above—including Husband's failure to show good cause in failing to timely request the reporter's record and Husband's agreement in form and substance to the divorce decree—we overrule Husband's second issue.

E.     **The trial court did not abuse its discretion by finding fraud.**

The divorce decree found that Husband committed constructive and actual fraud against the community estate.  In his third issue, Husband asserts that the trial

27

court's fraud findings fail because "the record lacks legally and factually sufficient evidence of the elements of fraud."

### 1. Applicable Law

The Family Code recognizes both actual fraud and constructive fraud as independent bases for fraud on the community. *See* Tex. Fam. Code § 7.009(a). Claims for waste, fraudulent transfer of community property, or other damage to community property belong to the community itself and must be considered in the trial court's property division. *Chu v. Chong Hui Hong*, 249 S.W.3d 441, 444–45 (Tex. 2008).

"Constructive-fraud claims are based on the fiduciary duties that exist between spouses and are sometimes labeled as claims for breach of fiduciary duty or waste." *Wadhwa v. Wadhwa*, 720 S.W.3d 169, 186 (Tex. App.—Houston [14th Dist.] 2025, no pet.). Such claims may be shown when one spouse unfairly deprives the other of the benefit of community property. *In re Marriage of Vedullapalli & Velagandula*, No. 05-22-01248-CV, 2024 WL 3218215, at *3 (Tex. App.—Dallas June 28, 2024, pet. denied) (mem. op.). Unlike actual fraud, constructive fraud does not require the intent to deceive. *Hongfei Liu v. Min Li*, No. 14-23-00810-CV, 2025 WL 1936929, at *3 (Tex. App.—Houston [14th Dist.] July 15, 2025, pet. denied) (mem. op.).

"Fraud is presumed whenever one spouse disposes of the other spouses's one-half interest in community property without that other spouse's knowledge or consent." *Key v. Key*, 712 S.W.3d 697, 705 (Tex. App.—Houston [14th Dist.] 2025, no

pet.). This presumption can arise by evidence of specific transfers or gifts of community assets outside of the community or by evidence that community funds are unaccounted for by the spouse in control of those funds. *Id.* Once the presumption arises, the burden shifts to the disposing spouse to prove the fairness of the disposition. *Id.* at 705–06.

If the trier of fact determines that a spouse has committed actual or constructive fraud on the community, the trial court "shall . . . calculate the value by which the community estate was depleted as a result of the fraud on the community and calculate the amount of the reconstituted estate" and "divide the value of the reconstituted estate between the parties in a manner the court deems just and right." Tex. Fam. Code § 7.009(b).

### 2. Analysis

The divorce decree stated that Husband had committed constructive fraud and actual fraud against the community estate. As relevant to Husband's third issue, the trial court entered the following findings and conclusions:

- [Wife] should be awarded a disproportionate share of the parties' estate for the following reasons, including but not limited to:

  1. fault in the breakup of the marriage;
  2. benefits the innocent spouse may have derived from the continuation of the marriage;
  3. disparity of earning power of the spouses and their ability to support themselves;
  4. education and future employability of the spouses;
  5. community indebtedness and liabilities;

29

6. earning power, business opportunities, capacities, and abilities of the spouses;
7. need for future support;
8. wasting of community assets by the spouses;
9. community funds used to purchase out-of-state property;
10. gifts to or by a spouse during the marriage;
11. reimbursement; and
12. attorney's fees to be paid.

- [Husband] transferred money without explanation from the parties' account during the marriage.

- [Husband] took withdrawals from his 401(k) close in time to the filing of this case without explanation.

- [Husband] paid his attorney over $67,000 during the pendency of this case.

The evidence at trial showed that Husband took out a loan—according to Husband, $47,000; according to Wife, $56,000—against his retirement account and that he sent more than half of the money to his family in Jordan and spent the rest. According to Wife, this occurred after she filed for divorce, and she was forced to borrow about $20,000 from her family to pay the rent on her apartment. Husband agreed that he withdrew more than half the money from the 401(k), "sent some of it" to Jordan, and spent the rest. He also averred that he was not sure if Wife had any knowledge that he had been sending the money overseas.

In addition, Wife testified that Husband took $15,000 from their joint account to pay for his attorney. Instead of also using money from the joint account, Wife turned to her father to pay for her current attorney, and she used a credit card to pay for her former attorney. While not disputing that he took the money, Husband

testified that he did not know why he removed $15,000 from the joint checking account or where he had spent it.

Moreover, Wife stated that Husband had a "house and land in Jordan" that he had paid for with $140,000 from their joint account. In addition, Husband admitted that he had paid his attorneys over $50,000 by the time of trial. When asked if he had paid his attorneys over $100,000, Husband testified that he did not know.

Husband's transfers of community assets outside of the community—to his family in Jordan—gave rise to a presumption of constructive fraud, which meant that Husband assumed the burden of proving the fairness of their disposition. *See Key*, 712 S.W.3d at 705. However, Husband presented no evidence at trial or on appeal showing the fairness of these transfers. *See Hongfei Liu*, 2025 WL 1936929, at *7. Moreover, Husband could not account for why he had removed $15,000 from the joint checking account or where he had spent the money. The trial court was free to determine that Husband did not meet his burden of proving the fairness of his disposition of community assets. *See id.*

After considering all of the evidence, and deferring to the factfinder on credibility issues, we conclude that a reasonable factfinder could have found that Husband committed constructive fraud on the community and that he failed to rebut the presumption that he committed constructive fraud.[13] Accordingly, for that reason

---

[13]Because the evidence sufficed to support the trial court's constructive-fraud finding, we need not address the trial court's actual-fraud finding. *See* Tex. R. App. P.

31

as well as Husband's failure to establish good cause for his delay in requesting the reporter's record and his agreement in form and substance to the divorce decree, we overrule Husband's third issue.

## IV. CONCLUSION

Having overruled all of Husband's issues, we affirm the trial court's final divorce decree.

/s/ Dana Womack

Dana Womack
Justice

Delivered: May 21, 2026

---

47.1; *Sharma v. Jani*, No. 02-23-00045-CV, 2024 WL 2066363, at \*12 n.18 (Tex. App.—Fort Worth May 9, 2024, no pet.) (mem. op.).